******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE DANIEL N. ET AL.*
(AC 38454)

Alvord, Sheldon and Keller, Js.

*Argued February 4—officially released March 9, 2016***

(Appeal from Superior Court, judicial district of New Haven, Juvenile Matters, Cronan, J.)

*David J. Reich*, for the appellant (respondent mother).

*Renee Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Michael Besso* and *Benjamin Zivyon*, assistant attorneys general, for the appellee (petitioner).

*Thomas F. Mitola*, for the minor children.

*Opinion*

SHELDON, J. The respondent mother, Nadine D., appeals from the judgments rendered in favor of the petitioner, the Commissioner of Children and Families, in which the trial court terminated the respondent's parental rights with respect to her three minor children, Daniel N., Molli O. and Joel O.[1] On appeal, the respondent claims that the court (1) violated her substantive due process rights by not properly considering, as the least restrictive alternative to the termination of her parental rights, a transfer of guardianship of Molli and Joel to their paternal grandparents, and (2) improperly determined that the termination of her parental rights was in the best interests of her three children. We affirm the judgments of the trial court.

The following factual and procedural history is relevant to the claims on appeal. Daniel was born to the respondent and his father, Jose N., in 2006. Molli and Joel, who have a different father than Daniel, namely, Manuel O., are twins who were born in 2012. Shortly after Daniel's birth, the Department of Children and Families (department) became involved with the family, and the department continued to be involved throughout a period of time extending to and after the birth of Daniel's half-siblings, because of substance abuse, domestic violence, and mental health issues. On September 27, 2012, the court granted the petitioner's motion for an order of temporary custody with respect to all three children, which led to an adjudication of neglect and their resulting commitment to the care and custody of the petitioner. Daniel was returned to his mother's care on January 24, 2013, and Molli and Joel were returned to her care on April 4, 2013, all under orders of protective supervision. On September 17, 2013, the department invoked a ninety-six hour hold as to the three children after being informed by a representative of the Family Based Recovery program that the respondent was in a drug-induced condition. The ninety-six hour hold was followed by a court order of temporary custody. The fathers of all children were both incarcerated at that time, and thus were not potential resources for their care. The petitioner later moved that the orders of protective supervision be modified to an order of commitment, which the court granted on October 8, 2013. All three children have remained in the care and custody of the petitioner since that date.

On December 26, 2013, the petitioner filed petitions to terminate the parental rights of the respondent and the fathers of the children. On January 16, 2014, Manuel O. filed a motion to transfer guardianship of Molli and Joel to his parents, the children's paternal grandparents. That motion was consolidated for hearing along with the trial of the termination petitions, which was held on February 3, 4, and 5, and June 24 and 25, 2015. The respondent was represented by counsel throughout the

trial, and the respondent testified at trial. Several witnesses also testified at trial, and multiple exhibits were admitted into evidence in this fully contested case.

The court issued its memorandum of decision on September 4, 2015. In that decision, the court made the following determinations: the department had made reasonable efforts to reunify the respondent with her children but she was unable or unwilling to benefit from the reunification efforts; the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of each child, she could assume a responsible position in their lives; the respondent has had "repeated incidents of drug involvement" and "ongoing involvement with a culture of domestic violence"; all three children have had multiple placements in their lives; Daniel was hospitalized twice in 2013 for psychiatric problems; Molli and Joel were placed initially in a relative foster home after their removal from the respondent's care, but those relatives were unwilling to take them in after their second removal; Molli and Joel were subsequently placed with a paternal aunt, but that placement did not work out, and thus they were placed in the same therapeutic foster home as Daniel; relying upon the testimony of Dr. Ines Schroeder, who had conducted court-ordered psychological evaluations of the respondent and all three children, Daniel would suffer significantly if he were moved again because he has been at his current home for a long period of time and has developed a relationship with his foster parents to the point of calling them "mom" and "dad"; Schroeder also had concerns for the well-being of Molli and Joel if they were moved again; although the paternal grandparents of Molli and Joel had presented themselves as possible resources for them, several factors impeded the placement of the twins with them; and there was "no justification for allowing more time for the parents to work on reunification." The court, throughout its opinion, referenced the applicable statutes and stated that the petitioner had carried her burden in the termination proceedings by clear and convincing evidence. Under that standard, the court made the adjudicatory determination that the petitioner had established grounds for the termination of the respondent's parental rights, and the subsequent dispositional determination that such termination was in the children's best interests. This appeal followed.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the

trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"Our Supreme Court has determined that [i]n order to terminate a parent's parental rights under [General Statutes] § 17a-112, the petitioner is required to prove, by clear and convincing evidence, that: (1) the department has made reasonable efforts to reunify the family; General Statutes § 17a-112 (j) (1); (2) termination is in the best interest of the child; General Statutes § 17a-112 (j) (2); and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3). . . .

"[A] hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the [parent's] parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § [17a-112 (k)] . . . ." (Citations omitted; internal quotation marks omitted.) *In re Joseph M.*, 158 Conn. App. 849, 858–59, 120 A.3d 1271 (2015). With these principles in mind, we address the respondent's claims in turn.

## I

The respondent first claims that the court violated her substantive due process rights by failing to consider, as the least restrictive alternative to the termination of her parental rights as to Molli and Joel, a transfer of their guardianship to their paternal grandparents.[2] We disagree.

As to the motion to transfer guardianship of Molli and Joel to their paternal grandparents, the trial court explained: "The court heard evidence that the paternal grandparents presented themselves as resources. The court does not question their intentions and commends them for coming forward. However, it was not clear how this could be accomplished. The grandparents offered to move to Connecticut, which would require the paternal grandfather to give up a steady job and sell the family home in Florida. Paternal grandmother

came to Connecticut but paternal grandfather was still working in Florida. In addition, witness Georgia Goldburn, the director of the Hope Child Development Center, testified that the twins display very challenging behaviors and she did not think that the grandmother had the resources to manage and deal with the children on a daily basis. . . . In addition, the court heard evidence that paternal grandfather had involvement with the criminal justice system in Florida concerning one of his children." The court thus implicitly denied the motion to transfer guardianship of Molli and Joel to their paternal grandparents and found "through clear and convincing evidence that termination is in the best interests of all three children."

On appeal, the respondent argues: "In this case, the trial court did consider the transfer of guardianship but found that the grandmother would have difficulty handling both twins. . . . Though the court did consider and deny the transfer of guardianship, it did not apply the least restrictive placement standard." The respondent contends that the court's failure to consider transfer of guardianship as the least restrictive alternative to termination violated her right to due process. She concedes that she did not raise her due process claim at trial, and thus she asks this court to review her unpreserved constitutional claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3]

In considering the paternal grandparents as a potential placement resource for Molli and Joel, the trial court clearly did so as an alternative to termination of the rights of their parents, and that placement would have been less restrictive than termination. We thus conclude that in finding that termination of the parental rights was in the best interests of the children, the court necessarily found that termination was the least restrictive permanency plan required to protect the children's best interests. See *In re Brayden E.-H.*, 309 Conn. 642, 661, 72 A.3d 1083 (2013) (in applying best interests standard, trial court necessarily found that termination was least restrictive permanency plan consistent with children's best interests). Accordingly, we conclude, as did our Supreme Court in *In re Brayden E.-H.*, that "even if we were to assume, arguendo, such a least restrictive determination is constitutionally mandated . . . the respondent's claim fails because the record reflects that this standard was satisfied."[4] Id., 645.

II

The respondent also claims that the court improperly determined that the termination of her parental rights was in the best interests of her three children. As to Molli and Joel, she claims that the court erroneously denied the motion to transfer guardianship to their paternal grandparents. As to Daniel, the respondent claims that the court failed to consider his feelings and emotional ties to her pursuant to § 17-112 (k) (4). We

are not persuaded.

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . It is well settled that we will overturn the court's decision that the termination of parental rights is in the best interest of the [child] only if the court's findings are clearly erroneous. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence." (Footnote omitted; internal quotation marks omitted.) *In re Joseph M.*, supra, 158 Conn. App. 868–69; see also *In re Nevaeh W.*, 317 Conn. 723, 739, 120 A.3d 1177 (2015).

A

As to Molli and Joel, the respondent claims that the trial court erred in not transferring guardianship to their paternal grandparents.[5] The respondent principally challenges the court's reliance on Goldburn's testimony that Molli and Joel display challenging behaviors that she did not think the grandmother could handle on a daily basis. Although the respondent did not object to this testimony at trial, she now argues that Goldburn lacks the expertise to render such an opinion, which was based upon Goldburn's daily contact with the children. The respondent also challenges the court's reliance on Goldburn's opinion that the grandmother might not be able to handle the children because Goldburn acknowledged that her own staff had difficulty handling them. In making this claim that the court's decision was based upon "questionable evidence," the respondent asserts the perplexing argument that Goldburn's testimony demonstrates that the children would be difficult for anyone to handle. This argument, however, does not contradict or undermine the court's concern that the grandmother might not be able to handle the children, but rather underscores it. The respondent also fails to address other factors cited by the trial court in addressing the propriety of vesting guardianship with the paternal grandparents, notably the fact that they reside and are employed in Florida and the grandfather's criminal history. The respondent has thus failed to demonstrate that the trial court erroneously deter-

mined that the termination of her parental rights was in the best interests of Molli and Joel.

## B

As to Daniel, the respondent claims that the court erred in finding that termination of her parental rights was in his best interests because it failed to consider his feelings for her, that he had a strong bond with her and wished to return to her. We disagree.

In assessing Daniel's best interests, the court noted that he had had multiple placements in his young life and that he had been hospitalized twice in 2013 for psychiatric problems. The court noted Schroeder's opinion that Daniel "has had a very difficult childhood: many moves, changes in primary caregivers, instability in those primary caregivers, great difficulty in witnessing discord and anger and domestic violence situations with his parents . . . each move is extremely difficult for him. . . . Daniel would suffer significantly if he were moved again because of the fact that he has been in [his current] placement for a long period of time. He has developed a relationship with his foster parents to the point of calling them mom and dad. And it seems that he is comfortable in this setting and has made strong attachments." The court found that the respondent "has not demonstrated an ability to deal with the needs of Daniel."

The respondent claims that the court failed to consider Daniel's bond with the respondent. Our Supreme Court has explained: "[T]he fact that the legislature [has interpolated] objective guidelines into the open-ended fact-oriented statutes which govern [parental termination] disputes . . . should not be construed as a predetermined weighing of evidence . . . by the legislature. Where . . . the record reveals that the trial court's ultimate conclusions [regarding termination of parental rights] are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding . . . .

"Indeed . . . [t]he balancing of interests in a case involving termination of parental rights is a delicate task and, when supporting evidence is not lacking, the trial court's ultimate determination as to a child's best interest is entitled to the utmost deference. . . . Although a judge [charged with determining whether termination of parental rights is in a child's best interest] is guided by legal principles, the ultimate decision [whether termination is justified] is intensely human. It is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript. . . . [Thus] although a trial court shall consider and make written findings regarding the factors enumerated

in § 17a-112 (k), a trial court's determination of the best interests of a child will not be overturned on the basis of one factor if that determination is otherwise factually supported and legally sound." (Citations omitted; internal quotation marks omitted.) *In re Nevaeh W.*, supra, 317 Conn. 739–40.

Here, the court stated in its memorandum of decision that it had considered all of the factors set forth in §17a-112 (k), including the emotional ties between the children and their parents. The respondent argues that: "If a child has a strong enough attachment to a parent, the loss of that relationship might override the need for permanency." Although that may be true, the inverse may also be true—other factors that support termination might override a child's connection with his or her parent. It is evident from an examination of the trial court's decision in its entirety that it considered all of the required statutory factors. In light of the trial court's additional findings regarding the respondent's inability to parent her children due to her history of substance abuse and domestic violence, which are unchallenged by her, we conclude that the court considered Daniel's feelings toward his mother, but balanced them against those other factors and determined that termination was in Daniel's best interests. We thus conclude that the trial court's finding as to Daniel's best interests was factually supported and legally sound.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** March 9, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of the children's fathers were also terminated. Because they are not parties to this appeal, we refer in this opinion to the respondent mother as the respondent.

[2] The respondent also claims that such consideration should have been given in the adjudicatory phase of the termination trial, not in the dispositional phase, which is the context in which the court considered the grandparents' potential role as placement resources in this case. The respondent argues this claim as one of first impression in Connecticut and asks this court to read such a requirement into § 17a-112 (j). The legal authority presented by the respondent in support of this argument consists of three out of state cases that do not stand for the proposition advanced by the respondent. The respondent's argument that a less restrictive permanency plan must be considered prior to reaching the dispositional phase of a termination trial finds no support in our law and is inadequately briefed. We fail to discern the relevance of an alternative permanency plan to the threshold adjudication of parental fitness.

[3] We will review an unpreserved claim when "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong).

[4] In *In re Brayden E.-H.*, supra, 309 Conn. 656, the court eschewed deciding the constitutional question of whether the respondent had a substantive due process right to a determination that termination is the least restrictive means to protect a child's best interest. We do the same.

[5] We note that the respondent did not file the motion to transfer guardianship to the paternal grandparents; nor did she present any evidence at trial in support of that motion.